# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**DAVID KELLAM, SUSAN KELLAM,**
**and KELLAM & EATON, INC.,**

**Plaintiffs,**

v.                                                    **Civil Action No.: 2:06cv178**

**BERKSHIRE-HUDSON CAPITAL XI, L.L.C.,**
**NORTH LANDING RETAIL INVESTORS, L.L.C.,**
**GARY J. DAVIES, DAVID P. HILL,**
**JAMES A. FAGAN, Jr., and**
**ECKERD CORPORATION,**

**Defendants.**

## OPINION AND ORDER

This matter is before the Court on the Motion of Berkshire-Hudson Capital XI, L.L.C.,

[hereinafter "Berkshire"], Gary J. Davies, David P. Hill, and James A. Fagan, Jr. [hereinafter

"Individual Defendants"] to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed

on April 25, 2006. (Doc. 9.) The Court held a hearing on July 17, 2006, and ruled from the

bench on this matter. For the reasons set forth herein, the Motion to Dismiss is **Denied**.

### I. Procedural Background and Factual History

On March 24, 2006, David Kellam, Susan Kellam, and Kellam & Eaton, Inc., [hereinafter

"Plaintiffs"], filed a Complaint against Berkshire, the Individual Defendants, North Landing

Retail Investors, L.L.C., [hereinafter "North Landing"] and Eckerd Corporation [hereinafter

"Eckerd"].  (Doc. 1.)

The instant Motion to Dismiss involves three lease agreements.  The first lease agreement, [hereinafter "Original Ground Lease"], was executed on February 5, 2003, between Plaintiffs, as lessor, and Berkshire, as lessee, in which Berkshire became the tenant of approximately five (5) acres of real property located at the intersection of Princess Anne Road and North Landing Road in Virginia Beach, Virginia, for a term of twenty (20) years and for the purpose of "developing and constructing a shopping center that initially is intended to contain an Eckerd Drugstore and other shops/stores . . . ."  Pls.' Complaint, Ex. A, Original Ground Lease, Preamble.

> Section 4.08 of the Original Ground Lease states as follows, in pertinent part,
>
> [Berkshire] hereby reserves the right, and [Plaintiffs] hereby consent[] and agree[], to execute immediately upon [Berkshire's] request two (2) separate ground leases replacing this Lease (the "Replacement Leases"), substantially in the same form as this Lease, at any time prior to or during the Term.  It is understood by the parties hereto that one Replacement Lease shall be for that portion of the Leased Land to be occupied by Eckerd (the "Eckerd Parcel") and the other Replacement Lease shall be for the balance of the Leased Land (the "Remaining Parcel").

Id. at Ex. A, Original Ground Lease at § 4.08.

On December 2, 2006, the two "Replacement" leases contemplated in § 4.08 of the Original Ground Lease were executed.  Pls.' Complaint at ¶ 16.  The first was executed between Plaintiffs and Berkshire, whereby Berkshire would develop approximately 3.76 acres of the total 5-acre parcel as a retail shopping center [hereinafter "Berkshire  Lease"].  Id.; Ex. B, Berkshire Lease, Preamble.  The 3.76-acre parcel subjected to the Berkshire Lease is the parcel of land

2

referred to in the Original Ground Lease as the "remaining parcel."  The Berkshire Lease expressly provided that it was intended replace the Original Ground Lease.  Id., Ex. B, Berkshire Lease.  It also contained an additional section at the end of the Lease, which was not in the Original Ground Lease, providing that "[t]he terms of the Original Ground Lease are incorporated herein and shall remain in full force and effect; provided that in the event of any conflict between the terms of this Lease and the terms of the Original Ground Lease, the terms of this Lease shall control."  Id., Ex. B, Berkshire Lease at § 18.21.  It is not disputed that the Berkshire Lease did, in fact, replace and substitute the Original Ground Lease with respect to the remaining 3.76-acre parcel as contemplated in § 4.08 of the Original Ground Lease.  Pls.' Complaint at ¶ 18.

The other lease, also executed on December 2, 2003, is the subject of this litigation.  This lease was executed between Plaintiffs, as lessor, and North Landing, as lessee, in which North Landing was to become the tenant of approximately 1.71 acres of the 5-acre parcel for the purpose of "developing and constructing an Eckerd Drugstore . . . ." [hereinafter "North Landing Lease"].  Pls.' Complaint, Ex. C, North Landing Lease, Preamble.  The 1.71-acre parcel subjected to the North Landing Lease is the parcel of land referred to in the Original Ground Lease as the "Eckerd parcel."  Taken together, the Berkshire Lease and the North Landing Lease cover no more and no less than the entire 5-acre parcel in the Original Ground Lease.

Unlike the Berkshire Lease, the North Landing Lease does not expressly state that it was intended to replace the Original Ground Lease.  Further, the parties to the North Landing Lease did not insert an additional section 18.21, as they had in the Berkshire Lease, incorporating and governing the survival of terms from the Original Ground Lease.  The parties to this Motion

3

dispute whether the North Landing Lease replaced and superceded the Original Ground Lease, absent the additional "replacement" language and provisions found in the Berkshire Lease.

Plaintiffs allege that between August 2005 through November 2005, and between December 2005 through March 2006, North Landing failed to pay certain rent, tax and insurance obligations [hereinafter "payment obligations"], as required by the terms of the North Landing Lease.  Id. at ¶¶ 21-26; Ex. C, North Landing Lease at §§ 4.01, 5.01, 6.01, and 11.03.  For these breaches, Plaintiffs hold North Landing primarily liable.  Plaintiffs allege that because the North Landing Lease did not expressly replace the Original Ground Lease, the Original Ground Lease remains in full force and effect with respect to the 1.71-acre parcel subjected to the North Landing Lease.  Id. at ¶ 30.  As a result, Plaintiffs further allege that Berkshire remains liable for the payment obligations contained in the North Landing Lease.  Id. at ¶ 31.

Plaintiffs also hold the Individual Defendants liable pursuant to certain guaranty provisions contained both the Original Ground Lease and the North Landing Lease.  These analogous provisions are found in §§ 4.07 of both Leases and are titled "Guaranties."  Id., Ex. A, § 4.07, Ex. C, § 4.07.  The Individual Defendants did not sign the Original Ground Lease, nor the North Landing Lease, with the exception of Individual Defendant Gary J. Davies, whose signature appears as "Gary Davies, Manager" in the signature block designated for Berkshire and North Landing, respective to their Leases.  Plaintiffs allege that pursuant to §§ 4.07 of the Original Ground Lease and the North Landing Lease, the Individual Defendants agreed to guarantee North Landing's payment obligations and are personally liable for North Landing's breaches.  Id. at ¶¶ 29-31.

The moving parties argue that Plaintiffs' breach of contract claim against Berkshire should be dismissed on the grounds that the North Landing Lease, to which Berkshire is not a party, wholly substituted and replaced the Original Ground Lease.  Defendants' Memorandum in Support of their Motion to Dismiss at 1 [hereinafter "Def.'s Mem. Supp."].  (Doc. 10.)  The moving parties also argue that Plaintiffs' claim of personal liability against the Individual Defendants should be dismissed on the grounds that the Individual Defendants did not agree to be personally liable and their purported personal guaranties are unenforceable by virtue of the Virginia Statute of Frauds because they did not sign the Leases in their personal capacities.  Id.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  A Rule 12(b)(6) motion should only be granted "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'"  Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)).

### III. DISCUSSION

The first issue in this case is whether the record before the Court clearly shows that Plaintiffs can prove no set of facts demonstrating that the North Landing Lease did not replace the Original Ground Lease.  The second issue is whether Plaintiffs can prove no set of facts demonstrating an enforceable personal guaranty for the instant breaches made by the Individual Defendants.  The Court will address these two issues in turn.

### A.  Replacement of the North Landing Lease

Plaintiffs argue that because the North Landing Lease did not contain a specific provision expressly stating that the North Landing Lease was replacing and superceding the Original Ground Lease, as in the Berkshire Lease, the Original Ground Lease remains in full force and effect.  Plaintiffs' Memorandum in Opposition of the Motion to Dismiss at 5-6 [hereinafter "Pls.' Mem. Opp."].  In briefing this claim, the moving parties argued that the "plain meaning" of § 4.08 of the Original Ground Lease dictates the conclusion that the North Landing Lease did, in fact, replace the Original Ground Lease.  Defs.' Mem. Supp. at 5 (citing Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 405 (4th Cir. 1998) (acknowledging that Virginia adheres to the "plain meaning" rule of contract interpretation).

A plain reading of § 4.08 of the Original Ground Lease, quoted above, indicates that at the time that Plaintiffs and Berkshire entered into the Original Ground Lease, those parties understood and agreed that, at Berkshire's request, 1) two new ground leases would be created; 2) they would be "replacing" the Original Ground Lease; 3) they would take substantially the same form as the Original Ground Lease; 4) they were defined as "the Replacement Leases"; and

6

5) one "Replacement Lease" would be for the Eckerd store (the 1.71-acre parcel) and the other would be for the remaining land (the 3.76-acre parcel).  As contemplated by § 4.08 of the Original Ground Lease, the Berkshire Lease and the North Landing Lease were executed in substantially the same form as the Original Ground Lease, and their scope was precisely divided so that one lease governed the parcel for the Eckerd store with the other lease governing the remaining land.  Thus, it could be successfully argued that the language of the Original Ground Lease conclusively demonstrates that the North Landing Lease did, in fact, replace the Original Ground Lease, rendering the Original Ground Lease unenforceable with respect to the 1.71-acre parcel subjected to the North Landing Lease.

On the other hand, because the "replacement" language and provisions contained in the parallel Berkshire Lease is conspicuously absent from the North Landing Lease, it could also be successfully argued that the North Landing Lease did not replace and supercede the Original Ground Lease.  The parties to the North Landing Lease may have intended that the North Landing Lease would replace the Original Ground Lease, and the omission of the parallel "replacement" language therein may have been a mistake or oversight.  However, it is not appropriate for the Court to resolve these contests of interpretation or speculate regarding the parties' intentions or possible mistakes at this stage of the proceeding.  Martin, 980 F.2d at 952.

The moving parties cite no controlling authority that would require the Court to find as a matter of law that the North Landing Lease did, in fact, replace the Original Ground Lease absent the parallel "replacement" language and provisions in the Berkshire Lease.  Thus, viewing the facts in the light most favorable to Plaintiffs, the nonmoving party, and drawing all reasonable inferences therefrom, the Court concludes that Plaintiffs are capable of establishing a set of facts

demonstrating that the North Landing Lease did not replace the Original Ground Lease.

Accordingly, dismissal pursuant to 12(b)(6) is not appropriate on this claim.  Goldsboro, 178

F.3d at 244.

**B.  Personal Guaranties of the Individual Defendants**

Section 4.07 of the Original Ground Lease provides that the Individual Defendants would

guaranty payment of certain payment obligations under the Original Ground Lease.  Id., Ex. A, at

4.07.  However, the Individual Defendants did not sign the Original Ground Lease, with the

exception of Individual Defendant Gary J. Davies [hereinafter "Mr. Davies"], whose signature

appears as "/s/ Gary J. Davies, Manager" under the signature block for "Tenant: Berkshire-

Hudson Capital XI, L.L.C., a North Carolina limited liability company."  Id. at unnumbered

signature page at end of Exhibit A.  There is no signature block designated for any of the

Individual Defendants to sign in any personal capacity.

Section 4.07 of the North Landing Lease is substantially identical to the parallel guaranty

provision in the Original Ground Lease, except that where § 4.07 ends in the Original Ground

Lease, an additional sentence is found in the North Landing Lease, stating that "[the Individual

Defendants] agree to execute Guaranty Agreements consistent with the provision of this Section

4.07 prior to the expiration of the Precondition Period . . . ."  Id. at Ex. C, Original Ground Lease

at § 4.07.

Just like the Original Ground Lease, the Individual Defendants did not sign the North

Landing Lease, with the exception of Mr. Davies, whose signature appears as "/s/ Gary J. Davies,

Manager," under the signature block for  "Tenant: North Landing Retail Investors, LLC, a North

8

Carolina limited liability company."  Id. at Ex. C, North Landing Lease at 28.  Just like the

Original Ground Lease, there is no signature block designated for any of the Individual

Defendants to sign in any personal capacity.

It is well-settled Virginia law that in order to charge an individual for the collateral

promise to pay for the debt of another, there must be a writing signed by the party to be charged.

Mid-Atlantic Appliances v. Morgan, 194 Va. 324, 327 (1952).  This is the essence of the

Virginia Statute of Frauds, which provides that

> [u]nless a promise, contract, agreement, representation, assurance, or
> ratification, or some memorandum or note thereof, is in writing and
> signed by the party to be charged or his agent, no action shall be
> brought in any of the following cases:
> . . .
> 4. To charge any person upon a promise to answer for the debt,
> default, or misdoings of another . . . .

Va. Code. Ann. § 11-2(4).

There is no dispute in this case that the personal guaranty provisions in §§ 4.07 of the

Original Ground Lease and the North Landing Lease are within the Statute of Frauds.  In this

case, Plaintiffs essentially argue that the Statute of Frauds requirement has been satisfied by the

signature of Mr. Davies.  Pl.'s Mem. Opp. at 2-3.  According to Plaintiffs, in signing as "Gary J.

Davies, Manager," Mr. Davies signed in both his corporate and personal capacity.  Id. at 4

("While the signature blocks where Davies' signature appears may seem to limit his capacity to

that of Manager for North [Landing] and Berkshire, respectively, the language in the leases

makes clear that [Mr.] Davies was signing in his individual capacity . . . .").

In signing under the signature block designated to the contracting corporate entity as

9

"Gary J. Davies, Manager," it is clear that Mr. Davies signed in a corporate capacity.  However, an ambiguity exists in this case between the terms contained in §§ 4.07 of the Original Ground Lease and the North Landing Lease, which provide for certain personal guaranties on the part of the Individual Defendants, whereas Mr. Davies' signature appears in the form of one signing only in a corporate capacity with no signature blocks provided for signing in a personal capacity.

The moving parties did not cite to the Court any controlling authority for the proposition that an agent for a principal who also incurs personal liability under a contract must sign in both personal and corporate capacity.  However, at oral argument, counsel for the moving parties agreed that ambiguities regarding whether a individual signs in a corporate or personal capacity, such as in the instant case, must be decided by reference to the intentions of the parties in entering into the contract.  See, e.g., Coal River Collieries v. Eureka Coal & Wood Co., 144 Va. 263, 269 (1926) ("It is elementary that, in case a written contract is ambiguous in its terms, parol proof of the facts and circumstances under which it was executed may be introduced to aid in its construction.").  Accordingly, Plaintiffs are entitled to discovery to determine whether Mr. Davies intended to be bound in his personal and/or corporate capacity.  Accord Whitmore v. Hawkins, 2000 U.S. App. LEXIS 14670 (4th Cir. 2000) (unpublished) (applying Maryland law in reversing a district court's dismissal of a defendant CEO in his individual capacity on the grounds that an ambiguity existed as to whether the defendant CEO intended to sign a contract in his individual capacity, where the CEO's signature appeared in his corporate capacity, where no signature block was provided for his signature in his personal capacity, and where the terms of the contract provided for the CEO to incur personal liability).

Plaintiffs further argue that by signing in his personal capacity, Mr. Davies was also

10

acting as the signing agent for the Individual Defendants, and that, given discovery, Plaintiffs

believe that they will be able to produce a writing evidencing Mr. Davies' authority to sign on

behalf of the Individual Defendants that will satisfy the Statute of Frauds. Id. at 3-4. Plaintiffs

cite T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC, 385 F.3d 836, 841 (4th Cir.

2004), for the proposition that dismissal pursuant to Rule 12(b)(6) for failure to produce a writing

satisfying the Statute of Frauds is inappropriate where a plaintiff alleges the existence of a

sufficient writing. There, the Fourth Circuit noted that

> dismissal under 12(b)(6) is appropriate only if the plaintiff can prove
> no set of facts that would support its claim. . . . Because [plaintiff]
> has alleged facts that would allow it to enforce the contract, even in
> the absence of a written agreement, the district court erred in relying
> on the statute of frauds to support dismissal under Rule 12(b)(6).

T.G. Slater & Son, 385 F.3d at 841.

The plaintiffs in T.G. Slater & Son affirmatively alleged the existence of a writing,

whereas the instant Plaintiffs did not affirmatively allege such in the Complaint or in their

briefing of the instant Motion. However, the record gives rise to the possibility that other

writings may be produced to evidence the alleged personal guaranties of the Individual

Defendants. Moreover, at oral argument, counsel for Plaintiffs affirmatively alleged that other

documents, such as closing checklists, commitment letters, and other closing documents, are

sought by Plaintiffs to evidence the alleged personal guaranties of the Individual Defendants.

While Plaintiffs may not ultimately succeed in producing a writing sufficient to satisfy the

Statute of Frauds, following T.G. Slater & Son, it is inappropriate for the Court to conclude at

this stage of the proceeding that Plaintiffs can prove no set of facts that will entitle it to relief.[1]

Id.  Accordingly, the moving parties' Motion to Dismiss must be denied.

### III. CONCLUSION

For the reasons set forth herein, the Motion to Dismiss is hereby **DENIED**.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record and to certify the order to the Director of the Patent and Trademark Office.

It is so **ORDERED**.

/s/
_____
HENRY COKE MORGAN, JR.
UNITED STATES SENIOR DISTRICT JUDGE

Norfolk, Virginia
August 14, 2006

---

[1]Yet another ambiguity emerges from § 4.07 of the North Landing Lease.  The additional paragraph appearing at the end of § 4.07 of the North Landing Lease provides that the Individual Defendants agree to execute separate "Guaranty Agreements" consistent with the personal guaranty terms contained in that section within the "Precondition Period."  Id. at Ex. C, at § 4.07.  At oral argument, counsel for the moving parties contended that these separate "Guaranty Agreements" were never entered into during the "Precondition Period."  Nonetheless, the inclusion and legal effect of this additional sentence gives rise to a variety of interpretations.  It could be argued that the guaranty terms of § 4.07 were of no force and effect unless and until the separate guaranty agreements were entered into.  On the other hand, it could be argued that the guaranty terms of § 4.07 were to be effective during the "Precondition Period" or until the separate guaranty agreements were entered.  Yet still, it could be argued that the terms of § 4.07 were not intended to be replaced or superceded by the separate guaranty agreements, but that the separate guaranty agreements were merely to further specify the terms of § 4.07.  The Court is required to resolve these ambiguities in the light most favorable to the Plaintiffs.

12
